Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5392 | **DATE** | August 21, 2001 |
| **CASE TITLE** | Boudreau, et al. v. Ryan, et al. (consolidated with White v. Patla - 01 C 806) | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry   Defendants' motion for protective order [56-1] is granted in part, denied in part. Enter Memorandum Opinion.

(11)     x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| x | Notices MAILED by judge's staff. | | AUG 2 4 2001 | 59 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | EB | |
| | Mail AO 450 form. | FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to _____ | 01 AUG 23 PM 5:17 | 8/23/01 date mailed notice | |
| KAM | courtroom deputy's initials | Date/time received in central Clerk's Office | KAM mailing deputy initials | |

(Reserved for use by the Court)

00-5392.012-MEV        August 21, 2001



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

EDWARD BOUDREAU, by and through his parents, Edwin and Ann Boudreau, BRIAN BRUGGEMAN, by and through his parents Kenneth and Carol Bruggeman, FRANCES CORSELLO, by and through her parents, Vincent and Agnes Corsello, ANGELA MOORE, by and through her parents, James and Brenda Moore, LINDA SEMPREVIVO, by and through her parents, Richard and Ruth Ann Semprevivo, individually and on behalf of a class,

        Plaintiffs,

v.                                                  No. 00 C 5392

GEORGE H. RYAN, in his official capacity as Governor of the State of Illinois, ANN PATLA, in her official capacity as Director of the Illinois Department of Public Aid, LINDA RENEE BAKER, in her official capacity as Secretary of the Illinois Department of Human Services, MELISSA WRIGHT, in her official capacity as Associate Director of the Office of Developmental Disabilities,

        Defendants.

## MEMORANDUM OPINION

This action was brought on behalf of developmentally disabled and mentally retarded adults who are eligible to receive Medicaid services but have not received these services. Before the court is defendant's motion for a protective order concerning mental



health records. For the reasons explained below, the motion is granted in part and denied in part.

**Background**

The named plaintiffs are five developmentally and/or mentally retarded adults (ages 29 to 49) who live with their parents, some of whom are elderly. They have each applied for and been found eligible to receive residential medicaid services in a community based setting. However, the Illinois agency that administer's the state's medicaid program, the Illinois Department of Human Services / Office of Developmental Disability ("DHS/ODD"), has not informed plaintiffs whether or when they will receive these services.

The defendants are George Ryan, Governor of the State of Illinois, Ann Patla, Director of the Illinois Department of Public Aid ("DPA"), Linda Renee Baker, Secretary of the Illinois Department of Health and Human Services ("HHS"), and Melissa Wright, Associate Director of the Office of Developmental Disabilities ("ODD"). Pre-admission screening agencies ("PAS agencies") handle placements in intermediate care facilities for the developmentally disabled ("ICF/DD").

In the course of discovery, the plaintiff subpoenaed documents from 66 PAS agencies and service provider agencies regarding the provision of residential medicaid services to developmentally disabled individuals. The subpoena requests the following documents, covering January 1, 1999 to the present:

1. Produce copies of any correspondence, letters or documents, to or from any person with the Illinois Department of Human Services or Office of Developmental Disabilities or the Illinois Department of Public Aid or the Governor's Office, **concerning the issues of providing, expanding or restricting Community Integrated Living Arrangements (CILAs).**

2. Produce copies of any correspondence, letters or documents, to or from any person with the Illinois Department of Human Services or Office of Developmental Disabilities or the Illinois Department of Public Aid or the Governor's Office, or any agency of the State of Illinois, **concerning the issues of providing, expanding or restricting Intermediate Care Facilities for the Developmentally Disabled (ICF/DDs).**

3. Produce copies of any correspondence, letters or documents, **concerning the issue of developmentally disabled persons being unable to obtain CILA services.**

4. Produce copies of any correspondence, letters or documents, **concerning the issue of developmentally disabled persons being unable to obtain ICF/DD services.**

5. Produce copies of any documents reflecting the number of **CILA or ICF/DD vacancies.**

6. Produce copies of any correspondence, letters or documents, to or from any person with the Illinois Department of Human Services or Office of Developmental Disabilities or the Illinois Department of Public Aid or the Governor's Office, or any agency of the State of Illinois, **concerning the issue of when CILA or ICF/DD services are appropriate for a disabled person.**

7. Produce copies of any correspondence, letters or documents, to or from any person with the Illinois Department of Human Services or Office of Developmental Disabilities or the Illinois Department of Public Aid or the Governor's Office, or any agency of the State of Illinois, **concerning the issue of what guidelines or priorities should be applied as to who shall receive CILA services.**

8.  Produce copies of any correspondence, letters or documents, to or from any person with the Illinois Department of Human Services or Office of Developmental Disabilities or the Illinois Department of Public Aid or the Governor's Office, or any agency of the State of Illinois, **concerning the issue of what guidelines should be applied as to who shall receive ICF/DD services.**

9.  Produce copies of any correspondence, letters or documents, to or from any person with the Illinois Department of Human Services or Office of Developmental Disabilities or the Illinois Department of Public Aid or the Governor's Office, or any agency of the State of Illinois, **concerning the issue that supports and services to the developmentally disabled should be provided in the least restrictive setting possible.**

10. Produce copies of any correspondence, letters or documents, to or from any person with the Illinois Department of Human Services or Office of Developmental Disabilities or the Illinois Department of Public Aid or the Governor's Office, or any agency of the State of Illinois, **concerning the issue that services for individuals with developmental disabilities should be delivered in the community of their choice.**

11. Produce copies of any and all documents which reflect that persons were found to be eligible for residential medicaid services and **have been unable to obtain CILA services.**

12. Copies of any and all documents which reflect that persons were found to be eligible for residential medicaid services and **have been unable to obtain ICF/DD services.**

13. Copies of any and all documents which reflect that **persons are waiting for CILA services.**

14. Copies of any and all documents which reflect that **persons are waiting for ICF/DD services.**

15. Copies of any and all documents which reflect the **number of persons seeking residential services who have been unable to obtain such services.**

Defs.' Motion, Exhibit 1 (emphasis in original).

The defendants filed this motion for a protective order, arguing that the plaintiffs seek mental health records that are privileged. In addition, the defendants also object on the ground that the documents are not relevant; that the burden of compliance would be unreasonable; and that the phrasing of the requests is repetitive and confusing. The plaintiffs respond that they do not seek privileged information and that the information sought is highly relevant. As to the other objections, the plaintiffs note that the defendants do not represent the PAS agencies or service provider agencies to which the subpoenas were sent, and that plaintiffs' counsel has been in communication with a number of agencies and their representative attorneys to resolve any difficulties posed by the document request.

## ANALYSIS

### I. Privilege

Referring to the Illinois Mental Health Confidentiality Act, the defendants argue that the plaintiffs' document request seeks mental health records, and that such records are privileged and protected from disclosure under Jaffee v. Redmond, 518 U.S. 1 (1996).

Federal Rule of Evidence 501 provides that:

> [e]xcept as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness ... shall be

governed by the principles of the common law as they may interpreted by the courts of the United States ... However ... with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness ... shall be determined in accordance with State law.

This is a federal question case, brought in part under 42 U.S.C. § 1983, and therefore, we look to federal common law, not Illinois statutes, to determine the application of a privilege. See Krocka v. City of Chicago, 193 F.R.D. 542, 544 n.1 (N.D. Ill. 2000).

In Jaffee v. Redmonds, the United States Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." Id. at 15. The privilege also extends to confidential communications made to licensed social workers in the course of psychotherapy. Id. The Jaffee court did not delineate the contours of the privilege, noting that such definition was more appropriately resolved on a case-by-case basis. Id. at 18.

The defendants argue that the plaintiff's requests would include mental health records and would require mental health records to be reviewed, including:

> a. records kept in the course of providing mental health or developmental disability services, including screening, diagnostic and placement counseling services, concerning particular recipients of such services;
>
> b. documents evidencing or relating to communications made by and to particular Medicaid recipients in the course of providing mental health or developmental

      disability services, including screening, diagnostic and placement counseling;

      c. documents disclosing information indicating that specific persons are receiving of (sic) mental health or developmental disability services, including screening, diagnostic and placement counseling services; and

      d. documents consisting of personal notes of provides (sic) rendering mental health or developmental disability services.

Defs.' Motion at 3.

The defendants have failed to show that these documents are covered under the psychotherapist-patient privilege. The psychotherapist-patient privilege is a limited one that applies only to certain mental health records, that is, confidential communications made to a psychotherapist or to a licensed social worker in the course of psychotherapy. Although we can imagine that some of the records at issue here include communications with social workers, there is no indication that any such communications were made in the course of psychotherapy. See United States v. Schwensow, 151 F.3d 650, 657 (7th Cir. 1998) (refusing to recognize the psychotherapist-patient privilege where the communication at issue was not made in the course of psychotherapy but to obtain an address for a detoxification center). Moreover, the defendants refer to documents regarding "mental and developmental disability services." Although the Illinois statute refers to the two together, we can discern nothing in the federal common law that accords a general privilege to documents regarding developmental disability services or treatment.

There is also no showing that the communications at issue were made with the expectation of confidentiality.[1] If they were not, then the privilege does not attach. See Barrett v. Vojtas, 182 F.R.D. 177, 178-182 (W.D. Penn. 1998) (stating that a crucial element of the psychotherapist-patient privilege is the intent to keep communications confidential, and there was no intent in this case because the information was intended to be disclosed to other parties); see also Phelps v. Coy, 194 F.R.D. 606, 607 (S.D. Ohio 2000) (noting that there was no confidentiality where the information was reported to the patient's employer).

The defendants have failed to show that the records sought infringe the psychotherapist-patient privilege. We do not understand the defendants to be arguing that this court should fashion another privilege that fits these circumstances.

II. **Relevance**

Citing our May 1st opinion, the defendants argue that the plaintiffs may not challenge isolated violations of a lawful state plan, and therefore, the individual records they seek are irrelevant. We disagree.

The plaintiffs do not seek discovery of CILA and ICF/DD placement decisions in order to challenge each denial individually.

---

[1] The defendants point out that a Medicaid regulation recognizes the need for protecting certain information about Medicaid recipients. See 42 C.F.R. § 431.306(d). This may give rise to an expectation of confidentiality as to some information, but it falls short of establishing that confidentiality was expected as to the information the plaintiffs request.

The plaintiffs maintain that they seek discovery of CILA and ICF/DD placement decisions to establish that Illinois' plan does not comply with the federal mandate to provide "medical assistance" with "reasonable promptness" to eligible individuals. We believe their document requests are designed to gather evidence that Illinois' plan fails to meet the needs of the eligible population in some systemic way. The records plaintiffs seek appear "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. Proc. 26(b)(1).

In addition, the discovery is relevant to ascertain the merit of defendants' claim that to their knowledge "all persons eligible for and requesting placement at an ICF/MR have been provided with options for placement in at least one ICF/MR," and also that there are vacancies in IFC/MRs.[2] Answer at 2, 3. The basis of the defendants' knowledge is unclear; according to their answer, it is the PAS agents that "handle all ICF/MR placements" and the DHS's Network Facilitators "do not in most instances review or become involved in those placements." Id. at 9. The plaintiffs cite a report issued by the Illinois Department of Public Health, which states that there is a shortage of 1,800 ICF/DD beds in the northeastern region of Illinois. The question of ICF/DD services is particularly significant to the plaintiffs' case because the defendants admit these are entitlement services under the Medicaid

---

[2] We refer to intermediate care facilities for the developmentally disabled (ICF/DD) and intermediate care facilities for the mentally retarded (ICF/MR) interchangeably, inasmuch as neither party has suggested the two are materially different.

Act. The plaintiffs are entitled to discover whether the defendants' claims as to the sufficiency of ICF/DD placements are accurate.

### III. Undue Burden and Confusion

The defendants argue that the plaintiffs' requests impose an undue burden on the agencies and that the phrasing of the plaintiffs' requests are repetitive and confusing.

As an initial matter, we note that the defendants do not appear to represent any of the agencies that have been subpoenaed. Plaintiffs' counsel states that about twenty of the agencies subpoenaed have already responded in some manner, either to advise him that they have no such records, that they are reviewing their records, or that they are in the process of complying. In addition, plaintiffs' counsel states that he has spoken with some attorneys who represent the agencies and he expects that any concerns regarding the subject matter of the subpoenas can be resolved without the court's involvement. Response at 2.

It is not apparent to us what is confusing or nebulous about the plaintiffs' document requests. In view of the cooperation that is apparently taking place, it would be inefficient for this court to revise the document requests absent some specific objection by a third party agency.

Plaintiffs have also submitted a proposed protective order which states, in pertinent part:

> If any Pre-Admission Screening Agency or Service Provider seeks to be reimbursed for the expense associated with compliance with the Subpoena, then prior to said production, such agency or provider shall furnish to Plaintiffs [sic] counsel a statement of probable expense, and Plaintiffs [sic] counsel then shall notify said agency or provider whether production is still requested, and if so, Plaintiffs [sic] counsel agrees to pay the reasonable expenses for production.

We will enter a protective order that includes this provision, which should be sufficient to protect the third party agencies from undue burden.

## IV. **Other issues**

The defendants also assert that the rights of unrepresented third parties must be protected, such as the rights of medicaid recipients to keep their records confidential; individual providers of mental health and developmental disability services to maintain the confidentiality of their "therapist's notes"; and providers of "mental health and developmental disabilities services who may be exposed to civil and criminal sanctions by the Illinois Mental Health Confidentiality Act."

The plaintiff's proposed protective order specifies that "no documents shall be produced that contain personally identifiable data of a developmentally disabled person seeking medicaid services." We will include this in the protective order. In this case, which is a class action where the plaintiffs seek information to establish the systemic practices of the defendants with regard

to the need and availability of two particular types of Medicaid services, no more is necessary. The notion that liability could flow from a response to the plaintiffs' subpoenas is speculative. We are hard pressed to imagine what injury an individual could incur from the release of documents of the kind involved here that do not even identify the individual. Moreover, we believe the fact that the subpoenas have been reviewed by this court, which is ordering that they be complied with, would protect the agencies from any possible liability for disclosure.

If any third party agencies do in fact believe that they might incur liability notwithstanding the above, they can present specific arguments for our consideration.

### CONCLUSION

The court is not persuaded by the defendants that the documents sought by the plaintiff are privileged or irrelevant or that compliance with the subpoenas could subject the agencies to liability of any kind. We will enter a protective order that we believe will accommodate the legitimate concerns of each side, and grant the plaintiffs leave to proceed with enforcement of the subpoenas.

DATE: August 21, 2001

ENTER: _____
John F. Grady, United States District Judge