# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge If Other than Assigned Judge | Morton Denlow |
|---|---|---|---|
| CASE NUMBER | 00 C 5392 | DATE | 1/8/2004 |
| CASE TITLE | Bruggeman, et al. vs. Blagojevich, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to compel discovery [164-1] is denied as follows: Plaintiffs' motion to compel document production requests numbered 17, 18, 19, 20 and 21 is denied except to the extent that an existing or a proposed budget includes efforts by Defendants to gain federal matching or Medicaid funding. Plaintiff's motion to compel document production for request number 31 is denied, except to the extent that Defendants' documents directly state that the Illinois Medicaid Plan and/or Illinois Medicaid Waiver Plan which services the developmentally disabled is not in compliance with the ADA or the RA.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 0 9 2004 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | 170 |
| ✓ | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| DK | courtroom deputy's initials | '04 JAN -9 PM 4:44 | 1/8/2004 date mailed notice | |
| | | Date/time received in central Clerk's Office | DK mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRIAN BRUGGEMAN, by and through his )
parents, Kenneth and Carol Bruggeman, )
FRANCES CORSELLO, by and through )
her parents, Vincent and Agnes Corsello, )
ANGELA MOORE, by and through her )
parents, James and Brenda Moore, GREG )
BLANEY, JR., by and through his parent, )
Yolanda Duncan, MELISSA COLE, by and )
through her parents, Frank and Annie Cole, )
JEFFREY FALCONE, by and through his )
parents Salvatore and Frances Falcone, )
SEAN STEELE, by and through his parents, )
Gregory and Lee Pionke, DAVID STIMAN, )
by and through his parents, Tony and )
Tammy Goodman, CHRISTINE AUER, by )
and through her parents, Alfred and )
Patricia Auer, DOUGLAS WILSMAN, by )
and through his parent, Loretta Holme, )
LEAH JONES, by and through her parents, )
Lawrence and Kathy Jones, )
)
      Plaintiffs, )   Case No. 00 C 5392
)
      v. )   Magistrate Judge Morton Denlow
)
ROD BLAGOJEVICH, in his official )
capacity as Governor of the State of Illinois, )
BARRY S. MARAM, in his official capacity )
as Director of the Illinois Department of )
Public Aid, CAROL L. ADAMS, in her )
official capacity as Secretary of the Illinois )
Department of Human Services, )
GEOFFREY OBRZUT, in his official )      JAN 0 9 2004
capacity as Associate Director of the Office )
of Developmental Disabilities, )
)
      Defendants. )

**MEMORANDUM OPINION AND ORDER**

170

This case comes before this Court on the issue of whether Plaintiffs are entitled to discovery of any and all documents concerning the extent to which Defendants (1) have not obtained matching or federal Medicaid funding for its programs for persons with developmental disabilities; and (2) have not complied with the Medicaid waiver program and Medicaid with respect to persons with mental disabilities. For the following reasons, Plaintiffs' motion to compel discovery is granted in part and denied in part.

## I. BACKGROUND

To the extent they are relevant to this determination, the Court adopts the underlying facts of this case as stated by the Seventh Circuit in *Bruggeman v. Blagojevich*, 324 F.3d 906, 908-09 (7th Cir. 2003):

> Several developmentally disabled . . . adults, residents of Illinois, sue the responsible state officials, in their official capacity, for alleged violations of the federal Medicaid statute, the Rehabilitation Act, and the Americans with Disabilities Act.
> . . .
> The Medicaid statute, administered by each state that enrolls in the Medicaid program but funded 50-50 by the state and the federal government, defrays certain medical expenses of individuals such as these plaintiffs who lack the wherewithal to pay the expenses themselves. The plaintiffs live at home with their parents in the Chicago metropolitan area. The parents would prefer their children to live in institutions known as "Intermediate Care Facilities for the Developmentally Disabled," most of which however are located in southern Illinois, far from Chicago. The vacancy rate for ICF/DDs in the Chicago area is very low, and the parents do not want to ship their children off to ICF/DDs in the southern part of the state because of the time and expense that would be entailed in traveling to visit them, and so they want the defendants to adopt a plan for expanding the number of ICF/DDs in the northern

> part of the state. They argue . . . that the defendants prefer the plaintiffs to live at home because it would cost the state more to pay for their care in an institution, and so the defendants refuse to write letters urging authorization of additional ICF/DDs in the northern part of the state to the planning agency that is responsible for such authorizations and without the letters the planning agency will not grant the authorizations.

The Plaintiffs' fourth amended complaint contains five counts:

    Count I:    Violation of Medicaid Act

    Count II:    Violation of [Fourteenth Amendment] Due Process

    Count III:    Violation of Americans with Disabilities Act

    Count IV:    Violation of Rehabilitation Act

    Count V:    Violation of [Fourteenth Amendment] Equal Protection.

The district court dismissed all five counts.

Plaintiffs appealed only the dismissal of Counts I, III, and IV. The Seventh Circuit sustained dismissal of Count I on the merits. *Bruggeman*, 324 F.3d at 910-11. It reinstated the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA") counts, and remanded the case to the district court to consider whether the State of Illinois ("the State") has a plan oriented to prevent the isolation or segregation of developmentally disabled adults. *Id.* at 913. For guidance on remand, the Seventh Circuit directed the parties and the district court to follow *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999). *Id.*

In their exploration of the issue posed by the Seventh Circuit, Plaintiffs served a request for production of documents upon Defendants. Defendants objected to certain

requests. After receiving no or an allegedly inadequate production of documents from Defendants, Plaintiffs filed a motion to compel discovery in response to requests numbered 6, 12, 14, 15, 16, 17, 18, 19, 20, 21, and 31. Plaintiffs have since withdrawn production requests 6, 13, 14, 15, and 16. Production requests 17 through 21, and 31 are outstanding, and the parties have fully briefed the two issues surrounding those requests. The first issue pertains to requests 17 through 21; the second issue pertains to request 31. This court will address each issue in turn.

## II. DISCUSSION

Under Federal Rule of Civil Procedure 26, the scope of discovery reaches any matter, not privileged, that is relevant to the claim or defense of any party. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Thus, the question is whether the information sought by Plaintiffs is relevant and likely to lead to the discovery of admissible evidence. The burden is on the party objecting to the discovery request to show why such discovery is improper. *Med. Billing Consultants, Inc. v. Intelligent Med. Objects, Inc.*, No. 01 C 9148, 2003 WL 1809465, at *1 (N.D. Ill. Apr. 4, 2003).

### A.  Requests Nos. 17, 18, 19, 20, and 21

#### 1.  The Requests and the Objections

Plaintiffs have requested Defendants to produce any and all documents which reflect that the State of Illinois provides funding for persons with developmental disabilities and

either "does" or "does not" obtain matching or federal Medicaid funding for those programs. Reqs. 17 & 18. More specifically, Plaintiffs request documents, records, reports, and studies done by the State or any agency, commission, or third party on that subject, Req. 19, or concerning "what steps the State of Illinois must undertake in order to obtain matching federal Medicaid funding" for those programs, Req. 21. Plaintiffs also request documents and proposals concerning whether certain mental disability programs funded by the State are not receiving federal medicaid reimbursement. Req. 20.

Defendants' response to each of Plaintiffs' requests is the same:

> It is undisputed that the State of Illinois maintains certain grant programs to adults with mental retardation/developmental disabilities which are not part of the Medicaid program and for which federal matching funds are not sought or received. As these grant programs are not Medicaid funded, the state has no obligation under the ADA or the Rehabilitation Act to make them a part of the Medicaid program. A recently issued report from the National Association of State Directors of Developmental Disabilities addressing these issues will be produced; however, Defendants object to and will not produce any other documents in this area generally because it is not relevant to the case at bar nor likely to lead to the discovery of relevant information.

Pl. Mot., Ex. A at 6-8.

### 2. The Dispute Regarding "Available Resources"

This case arises under the RA and the ADA, which include an integration mandate that requires those disabled persons who are protected by the acts and participate in state programs and services to obtain those services in the most integrated setting possible. *Pa. Prot. & Advocacy, Inc. v. Dep't of Pub. Welfare*, 243 F. Supp. 2d 184, 190 (M.D. Pa. 2003).

Both provisions are enforceable through private causes of action. *Barnes v. Gorman*, 536 U.S. 181, 185 (2002).

The RA prohibits discrimination by entities receiving federal funds. *See* 29 U.S.C. § 794(a); 28 C.F.R. § 41.51(a). Pursuant to 28 C.F.R. § 41.51(d), recipients of federal funds are required to "administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped persons." Furthermore, the Department of Justice has mandated:

> No qualified handicapped person, shall, on the basis of handicap, be excluded from participation in, be denied the benefits of, or otherwise be subjected to discrimination under any program or activity that receives or benefits from federal financial assistance.

28 C.F.R. § 41.51(a).

The ADA similarly provides:

> Subject to the provisions of this subchapter [Title II of the ADA], no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The Department of Justice implemented this section by promulgating the following rule:

> A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.

28 C.F.R. § 35.130(d).

The same standard applies for assessing compliance with the integration mandates of both the ADA and the RA. *See Frederick L. v. Dep't of Pub. Welfare*, 217 F. Supp. 2d 581, 591 (E.D. Pa. 2002). That standard is set forth in the regulations:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.

28 C.F.R. § 35.130(b)(7). Pursuant to the regulation, to prevent a modification to its system, a defendant may put forth a "fundamental alteration" defense, which requires a court to weigh and to balance the following factors after a complex fact-intensive inquiry: (1) the resources available to a state; (2) the range of services a state provides those with mental disabilities; and (3) a state's obligation to mete out those services equitably. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999); *Townsend v. Quasim*, 328 F.3d 511, 520 (9th Cir. 2003); *Martin v. Taft*, 222 F. Supp. 2d 940, 986 (S.D. Ohio 2002). In other words:

> Sensibly construed, the fundamental-alteration component of the reasonable-modifications regulation would allow the State to show that, in the allocation of *available resources*, immediate relief for the plaintiffs would be inequitable, given the responsibility the State has undertaken for the care and treatment of a large and diverse population of persons with mental disabilities.

*Olmstead*, 527 U.S. at 604 (emphasis added).

In this case, it is the meaning of "available resources" that gives rise to this dispute. Essentially, Plaintiffs argue that the federal matching and Medicaid funding that the State has *not* received during the relevant periods is within the scope of "available resources" that can

be used to reasonably accommodate Plaintiffs' immediate relief in an equitable manner. Defendants argue that such funding is outside the scope of "available resources" and therefore not relevant, nor likely to lead to the discovery of admissible evidence.

3. **The Scope of "Available Resources"**

The "fundamental alteration" defense recognizes that the State's responsibility to treat qualified disabled persons is not boundless. *Olmstead*, 527 U.S. at 603. Indeed, when the Supreme Court enunciated the fundamental alteration factors in *Olmstead v. L.C. ex rel. Zimring*, it did not look beyond the state's mental health budget for "available resources." In *Olmstead*, the appellate court made the assumption that the fundamental alteration defense applies only in the most limited of circumstances and, consequently, weighed the cost of expending additional funds to provide the individual plaintiffs with their requested relief against the defendant state's entire mental health budget. *Id.* at 595, 603. In rejecting the appellate court's construction, the Supreme Court did not expand the scope of "available resources" considered by the appellate court (i.e., the state's entire mental health budget), but rather it expanded the scope of expenditures weighed against that finite budget. *See id.* at 597, 603. Thus, instead of considering merely the cost of providing the plaintiff's requested relief, a court must also consider the range of services the state provides to others with mental disabilities. *Id.* at 597, 604. Moreover, it is notable that no factor discussed by the Court in *Olmstead* is speculative except the cost of plaintiff's requested relief. The Court never balanced costs against any resources beyond the state's existing mental health budget.

Applying *Olmstead*, the court in *Frederick L. v. Department of Public Welfare* declared that the scope of a state's "available resources" is the state's "mental health budget and nothing beyond that budget." 217 F. Supp. 2d at 592. The court in *Frederick L.* evaluated the defendant's fundamental alteration defense against the plaintiff's request for accelerated community placement under Title II of the ADA by analyzing the state's mental health budget. *Id.* That budget consisted of state mental health appropriations and federal-state "Medical Assistance" appropriations that covered the program at issue in the case. *Id.* Recognizing that the accelerated community placements would result in immediate extra cost for the defendant, the court noted that it would also factor in a *viable* source of funding if it that funding were identified by the plaintiffs. *Id.* at 593. However, the fact that such funding was not identified merely buttressed the court's conclusion that the demanded relief was a "fundamental alteration" and that the state was doing what it could with its limited budget. *Id.* The court noted that granting relief for the plaintiff would drain scarce resources to the detriment of others with mental disabilities because nothing short of an increase in funding would provide the relief sought. *Id.*

Similarly, in *Williams v. Wasserman*, 164 F. Supp. 2d 591, 638 (D. Md. 2001), the court found that the immediate shift of existing resources required by the plaintiff would result in a fundamental alteration. In *Williams*, the defendant had participated in various Medicaid "waiver" programs, which allow the use of federal funds to provide community services to a person who otherwise would have been served by the state. *Id.* at 634-35.

Although the court seemingly accepted the plaintiff's argument that it would be cheaper in the long-run to grant the requested relief, it found that the relief would not result in immediate cost saving to the defendant. *Id.* at 637. Furthermore, the court found that any cost savings eventually realized by the defendant by granting the requested relief would represent a relatively small percentage of the existing budget. *Id.* at 638. Without exploring the possibility of additional Medicaid funding, the court held that the immediate shift of resources sought by the plaintiff was a fundamental alteration, given the existing budget. *Id.*

Thus, it is clear to this Court that *Olmstead* and its progeny limit the scope of "available resources" to the state's mental health budget. This result makes logical sense because if a plaintiff is seeking immediate relief, as are Plaintiffs in this case, then only the resources available in the budget should be a factor; speculative or potential resources are irrelevant. It follows, therefore, that Defendants' failure in this case to obtain federal matching or Medicaid funding is irrelevant, as such funding is merely a speculative and not an available resource.

However, to the extent an existing or a current or future proposed budget has included efforts by Defendants to gain federal matching or Medicaid funding, then inquiry into those efforts is permissible because it may lead to admissible evidence at trial. The availability of that funding is also relevant because it may be a viable source of funding by the time of trial.

Finally, the Court acknowledges the decision in *Martin v. Taft*, 222 F. Supp. 2d 940, 970-73 (S.D. Ohio 2002), wherein that court, while exploring "available resources" under

10

a "reasonable modification" question, found that the plaintiff class of disabled persons sufficiently stated elements of an ADA claim to survive a motion to dismiss because the plaintiffs claimed, *inter alia*, that the state may request additional waiver slots to expand community-based services. This Court, however, respectfully disagrees with the decision because allowing such an inquiry is beyond the scope of inquiry permissible under *Olmstead*.

Because this issue thus has been decided under *Olmstead*, the Court need not address the Spending Clause constitutional issue raised by Defendants. Therefore, Plaintiffs' motion to compel document production for requests numbered 17, 18 ,19, 20, and 21 is denied regarding the availability of federal matching or Medicaid funds that were never sought by Defendants, and granted to the extent that Defendants' existing and proposed mental health budgets include actual or proposed matching federal Medicaid funding.

**B.     Request No. 31**

Plaintiffs have requested Defendants to produce "From 2001 to the present, any and all documents which reflect in any manner that the State of Illinois is not in compliance with the Medicaid waiver program and/or Medicaid with respect to persons with mental disabilities." Pl. Mot. at 5. Defendants object to this inquiry as being irrelevant and barred because the document request addresses only the Medicaid claim that has been dismissed. Def. Resp. at 13. Plaintiffs reply that they clarified the request in a letter to Defendants, dated November 6, 2003, which states: "The Plaintiffs are asking the Defendant to produce documents which reflect in any manner that the Illinois Medicaid Plan and/or Illinois

Medicaid Waiver plan which services the developmentally disabled is not in compliance with ADA or the Rehabilitation Act." Reply at 5-6. Defendants object to this modification, arguing that it violates Rule 34 and Rule 26(a) as being overly-broad, and, alternatively, Plaintiffs cannot now assert a new Medicaid claim. Def. Resp. at 13. The Court agrees with Defendants that the request does not comply with Rule 34.

At a minimum, information must be relevant to be discoverable. Fed. R. Civ. P. 26(b)(1). Relevance for the purposes of discovery is more broad than relevance for the purposes of evidence. *See* Fed. R. Civ. P. 26(b)(1). So long as the information to be discovered is not privileged and is reasonably calculated to lead to the discovery of admissible evidence, the information sought need not be admissible at trial. *Id.*; *Oppenheimer Fund Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978). The scope of "relevance" for purposes of discovery is determined by reference to subject matter in issue and not particular pleadings. Fed. R. Civ. P. 26(b)(1).

First, the Court rejects Defendants' contention that Plaintiffs are asserting a new Medicaid claim. Second, the Court accepts Plaintiffs' clarification as appropriate to avoid being related to the dismissed Medicaid claim. Plaintiffs' clarification of their request in a letter to limit the request to the State's Medicaid waiver plan's noncompliance with the ADA or the RA was permissible. *See Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193,

201 (N.D.W. Va. 2000) (affirming a magistrate judge's order compelling a defendant to answer a document request that was clarified by a subsequent letter). Therefore, the Court will analyze the document request as modified.

The Court finds that the request is beyond the scope of Rule 34 because it does not request the production of documents with "reasonable particularity." A request for production of documents must describe the documents requested with "reasonable particularity." Fed. R. Civ. P. 34. The test for reasonable particularity is whether the request places a party upon "reasonable notice of what is called for and what is not." *Parsons v. Jefferson-Pilot Corp.*, 141 F.R.D. 408, 412 (M.D.N.C. 1992), *cited in St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 514 (N.D. Iowa 2000); *Kidwiler*, 192 F.R.D. at 202 n.96. Thus, the party requesting the production of documents must provide "sufficient information to enable [the party to whom the request is directed] to identify responsive documents." *Parsons*, 141 F.R.D. at 412.

Here, Plaintiffs request all documents that *reflect in any manner* noncompliance with the ADA or the RA. The request does not place Defendants upon "reasonable notice of what is called for and what is not" because the language is overly-broad and extremely vague. *See Pulsecard, Inc. v. Discover Card Servs., Inc.*, No. 94-2304-EEO, 1995 WL 526533, at *3 (D. Kan. 1995) (finding as overly-broad the terms "refer in any manner to" and "related in any manner to"). As a result, Defendants cannot identify responsive documents. The language used requires Defendants to ponder and to speculate in order to decide what is and what is

13

not responsive. *See id.* Consequently, Plaintiffs have failed to phrase the request with reasonable particularity.

Therefore, Plaintiffs' motion to compel document production for request number 31 is denied. However, to the extent that Defendants' documents *directly* state that the Illinois Medicaid Plan and/or Illinois Medicaid Waiver Plan which services the developmentally disabled is not in compliance with ADA or the RA, those documents should be produced.

### III. CONCLUSION

For the reasons set forth in this opinion, **Plaintiffs' motion to compel document production for requests numbered 17, 18, 19, 20, and 21 is denied except to the extent that an existing or a proposed budget includes efforts by Defendants to gain federal matching or Medicaid funding. Plaintiff's motion to compel document production for request number 31 is denied, except to the extent that Defendants' documents directly state that the Illinois Medicaid Plan and/or Illinois Medicaid Waiver Plan which services the developmentally disabled is not in compliance with the ADA or the RA.**
**SO ORDERED THIS 8th DAY OF JANUARY, 2004.**

*Morton Denlow*

MORTON DENLOW
UNITED STATES MAGISTRATE JUDGE

**Copies mailed to:**

| | |
|---|---|
| Robert H. Farley, Jr. | J. William Roberts |
| ROBERT H. FARLEY, JR., LTD. | Michael J. Leech |
| 1155 S. Washington St. | Steven M. Puiszis |
| Naperville, IL 60540 | Aimee E. Delaney |
| | Special Assistant Attorneys General |
| Thomas G. Morrissey | HINSHAW & CULBERTSON |
| THOMAS G. MORRISSEY, LTD. | 222 North LaSalle Street |
| 10249 S. Western Avenue | Suite 300 |
| Chicago, IL 60643 | Chicago, IL 60601-1081 |
| | |
| Counsel for Plaintiffs | Counsel for Defendants |